THE NEW YORK & NEW ENGLAND RAILROAD COMPANY
*vs.* WILLIAM G. COMSTOCK, JR., AND OTHERS.

Hartford Dist., Oct. T., 1890. ANDREWS, C. J., CARPENTER, LOOMIS, SEYMOUR and TORRANCE, Js.

The rights of the owner of land condemned for railroad purposes differ in some important respects from the rights retained by the owner of land taken for a highway. The possession of the railroad company is necessarily exclusive.

The power to exclude every one from the railroad limits must be left, as matter of law, absolutely with the officers of the company who are immediately responsible, subject only to such state supervision as may be deemed expedient.

It does not follow, because there were long-used farm roads across the land condemned, that these crossings were to be considered as not included in the condemnation of the land.

The act of 1889 (Session Laws of 1889, pp. 81, 167,) provides, under a penalty, that no railroad company shall obstruct any farm crossing " until

the legal right to do so has been finally settled by a judgment or decree of the Superior Court," and that any railroad company may "bring its complaint against the person owning the land adjoining such crossing to the Superior Court, which shall hear and determine the rights of the parties." A railroad company which, before the act was passed, had made a fence across such a crossing, brought a suit in equity for an injunction to restrain the adjoining owners from removing it. Held to be a sufficient suit under the statute for determining the legal rights of the parties in the matter.

[Argued October 9th, 1890—decided March 4th, 1891.]

SUIT for an injunction against the defendants' using a claimed crossing over the track of the plaintiff corporation; brought to the Superior Court in Hartford County, and heard before *Thayer, J.* Facts found and judgment rendered for the defendants, and appeal by the plaintiff. The case is fully stated in the opinion.

*E. D. Robbins,* for the appellant.

The defendants do not claim a right of way of necessity across the railroad; nor that they have gained a right of way by adverse user. Their claim is based simply on the fact that the land in question was taken by condemnation, and that the fee thereof is in them. If sustained, it will prove of sweeping application. It raises squarely the fundamental question, what rights are acquired by the taking of land in regular form of law for railroad uses. The notion seems to be that these rights are merely like those of the public in a highway. But this view is clearly erroneous. A railroad company which has taken land in proper form of law is entitled to the exclusive possession of it. This is well settled by the authorities. *Jackson* v. *Rutland & Burlington R. R. Co.,* 25 Verm., 159; *Troy & Boston R. R. Co.* v. *Potter,* 42 id., 265, 274; *Hazen* v. *Boston & Maine R. R. Co.,* 2 Gray, 574, 580; *Proprietors of Canals & Locks* v. *Nashua & Lowell R. R. Co.,* 104 Mass., 1, 9. Nor can the fact that a well defined private road existed across the condemned land before it was taken make any difference whatever. *Presbrey* v. *Old Colony & Newport R. R. Co.,* 103 Mass., 1. Any other view would be absurd. No man can

have an easement in his own land.   Washb. on Easements,
670 ; *Atwater* v. *Bodfish,* 11 Gray, 150.   If the Comstocks
have a right simply as fee owners to enter upon this land,
this right cannot be confined to any particular point or
points.    They own the fee of one part just as much as of
another.   Nor can they be confined to a right of crossing.
They may enter to cut timber or grass by precisely the same
title.    They might even enter and cultivate a crop on the
land alongside the track, which is not actually occupied by
the railroad.    The logical statement of the defendants' claim
carries with it its own refutation.    It is not true that when
a railroad company pays, as it actually must, the full value
of land condemned, it acquires merely the right to lay rails
on the land and draw cars upon them.    It in truth acquires
the right of exclusive possession of the land taken, and in
its own discretion, in order to secure safety on the railroad,
may absolutely shut out all persons therefrom, including the
owners of the reversionary interest in the land.    *Boston Gas
Light Co.* v. *Old Colony & Newport R. R. Co.,* 14 Allen, 444 ;
*Brainard* v. *Clapp,* 10 Cush., 6 ; *Presbrey* v. *Old Colony R.
R. Co.,* 103 Mass., 1 ; *Proprietors of Locks & Canals* v. *Nash-
ua & Lowell R. R. Co.,* 104 id., 1 ; *Jackson* v. *Rutland & Bur-
lington R. R. Co.,* 25 Verm., 150 ; *Conn. & Passumpsic Rivers
R. R. Co.* v. *Holton,* 32 id., 43 ; *Troy & Boston R. R. Co.* v.
*Potter,* 42 id., 265 ; *Hayden* v. *Skillings,* 78 Maine, 413 ; *Ce-
dar Rapids &c. R. R. Co.* v. *Raymond,* 37 Minn., 204 ; *Fay-
etteville R. R. Co.* v. *Combs,* 51 Ark., 324 ; *Burnett* v. *N. &
C. R. R. Co.,* 4 Sneed, 528 ; Mills on Eminent Domain,
§ 208 ; Pierce on Railroads, 159.

*L. Sperry,* with whom was *J. A. Stoughton,* for the ap-
pellees.

1. Our statutes regard private crossings as a species of
property not to be lightly swept away.   See act of 1889,
" to prevent the arbitrary removal of farm-crossings by rail-
road companies."   " In the condemnation of a right of way
across a farm the necessities and conveniences of location for
farm-crossings should be taken into consideration, and after

condemnation it will be presumed that they were, and that the damages were estimated upon the hypothesis that a farm-crossing would not be constructed and maintained at any point where it would affect the safe and efficient operation of the road." Mills on Eminent Domain, § 213. See also *Chalcraft* v. *Louisville &c. R. R. Co.*, 113 Ill., 86. The record in the present case shows that in the condemnation proceedings reference was had to the crossings in question, and the fact found by the court that the railroad company has always recognized them, takes the case out of hypothesis and places it in the domain of fact. Again, it may be assumed that a legal obligation rests upon the railroad company to give facilities for crossing their tracks under condemnation proceedings. The statute provides that the Superior Court shall appoint appraisers to estimate all damages " for railroad purposes." Nothing more is estimated, and no further right is acquired.

2. This right of the corporation to use the land for railroad purposes becomes paramount but is by no means exclusive. " As a general rule a land owner has a reasonable right to farm-crossings at such places as the necessities of his farm demand," provided such crossings and the use thereof will not interfere with the paramount rights of the railroad company. Mills on Eminent Domain, § 213. " The presumption always is that the fee of highways is in the adjoining owner." *Copp* v. *Neal*, 7 N. Hamp., 275. " And the profits thereof consistent with the existence of the easement remain in the original owner." Lewis on Eminent Domain, § 151 ; *Tucker* v. *Eldred*, 6 R. Isl., 404. A very strong case on the doctrine of the undisturbed fee is found in *Blake* v. *Rich*, 34 N. Hamp., 282, in which it is held that " the exclusive right of property in the land, in the trees and herbage upon its surface, and the minerals below it, remains unchanged—subject always to the right of the corporation to construct and operate a railroad through it." " The stone and minerals under a railroad belong to the owner of the fee." Lewis on Eminent Domain, § 152. " The timber and grass found in public highways belong to the

owner of the adjoining soil." *Woodruff* v. *Neal*, 28 Conn., 165. " We conclude therefore that eminent domain is not of the nature of any estate or interest in property, reserved or otherwise acquired, but simply a power to appropriate individual property as the public necessities require." Lewis on Eminent Domain, § 3 ; *N. York, Housatonic & Northern R. R. Co.* v. *Boston, Hartford & Erie R. R. Co.*, 36 Conn., 196. Our court said in *Imlay* v. *Union Branch R. R. Co.*, 26 Conn., 255—" Hence when land is condemned for a special purpose, on the score of public utility, the sequestration is limited to that particular use. Land taken for a highway is not thereby convertible into a common ; as the property is not taken, but the use only, the right of the public is limited to the use." The finding of the court is conclusive upon the fact that the Connecticut Central Railroad Company, this plaintiff's predecessor in title, and the plaintiff, constructed and maintained bars at the crossings where the defendants had been accustomed to use them. These acts by both parties in interest must be taken as evidence of the interpretation given by them to the condemnation proceedings. " The nature and extent of a presumed right are measured by the adverse and unobstructed use of the right, and the use is conclusive evidence of the terms of the presumed grant." *Olcott* v. *Thompson*, 59 N. Hamp., 154. " Two easements may be enjoyed together." *Atkins* v. *Bordman*, 2 Met., 457 ; *Martein* v. *Delaware & Hudson Canal Co.*, 27 Hun, 533. The plaintiff lays great stress on the fact that the title was obtained by foreclosure of the mortgage bonds of the Connecticut Central Railroad, as though by some occult process greater interests were conveyed by such a proceeding than by ordinary purchase. This claim might be safely discarded on the general principle that one cannot convey more than his own interest in property ; but the exact question has been adjudicated, and it was held that " a purchaser at a mortgage sale cannot interfere with a farmcrossing." *Hunter* v. *Burlington & Cedar Rapids R. R. Co.*, 76 Iowa, 490.

3. An action of trespass or ejectment might have been

brought, but the plaintiff seeks an injunction. A strict construction of these proceedings and the interpretation gathered from the acts of the parties certainly throw great doubt over the plaintiff's claims of exclusive possession, and if they raise, as we claim they do, a question of disputed title to these crossings, no injunction will lie. " The relief in equity will be denied where the plaintiff's title is in dispute." Lewis on Eminent Domain, § 633. " But if the entry is made with the consent of the owner, upon some understanding as to the further adjustment of compensation, or if the owner acquiesces in a possession taken without his knowledge, he cannot enjoin the use of his property until he has exhausted his legal remedies or they are shown to be inadequate." Id., §§ 633, 634. A land owner may acquire a right of way across a railroad notwithstanding the statute. *Fisher* v. *N. Y. & N. E. R. R. Co.*, 135 Mass., 107. "An injunction will not be granted where the right to it as a matter of law is unsettled." *Del., L. & W. R. R. Co.* v. *Central Stock Yard Co.*, 43 N. Jer. Eq., 71, 77. " The cases in which a party will be denied an injunction, and be put on his action at law for damages, by reason of his delay in applying for the injunction, and the great injury which would result to the party who has thus been permitted to proceed, are those where such party has proceeded in good faith founded in the belief of his right to do so." *Vick* v. *Rochester*, 46 Hun, 607.

4. The statute will not be extended by implication. " No more is to be taken than is necessary for the accomplishment of the public object; and if the language of the act admits of a construction which will leave a fee in the owners subject to a public easement, it will be so construed." *N. York & Harlem R. R. Co.* v. *Kip*, 46 N. York, 546; *Gardner* v. *Brookline*, 127 Mass., 358; Mills on Eminent Domain, § 49. " Land condemned for railroad purposes cannot be used for any other." *Proprietors of Locks & Canal* v. *Nashua & Lowell R. R. Co.*, 104 Mass., 1. " No implication ought to be indulged that a greater interest or estate is taken than is absolutely necessary to satisfy the language and object of

the statute." Mills on Eminent Domain, § 49; *Washington Cemetery* v. *Prospect Park & Coney Isl. R. R. Co.*, 68 N. York, 591. "If there are doubts as to the extent of the power, after all reasonable intendments in its favor, the doubts should be resolved by a decision adverse to the claim of power." *N. York & Harlem R. R. Co.* v. *Kip, supra.*

LOOMIS J. This is a complaint for an injunction to prevent the defendants from crossing the railroad track of the plaintiff. The following is a brief statement of the material facts contained in the finding.

The land in question, now occupied by the plaintiff's railroad tracks, was formerly owned by William G. Comstock, the father of the defendants, who derived title by deed from him, and it formed part of one contiguous tract of land forty-four rods wide, and extending easterly from Main Street in East Hartford about two hundred rods. In 1875 the Connecticut Central Railroad Company took, by condemnation for railroad purposes, a strip of land, including that now in question, extending northerly and southerly through said entire track, dividing it into two nearly equal parts, and leaving no access to that part lying east of the railroad, except by crossing the railroad; and when the tracks were laid on the strip of land so condemned the Connecticut Central Railroad Company constructed suitable crossings at two places where said Wm. G. Comstock, Sen., had been accustomed to pass from one part of the tract to the other, and these crossings were maintained by the Connecticut Central Railroad Company as long as it continued to run and operate the road, and have since been maintained by the plaintiff corporation until August, 1888, and said William G. Comstock, Sen., while he continued owner of the tract was, and the defendants since they acquired title have been, accustomed at all times when they had occasion for farm purposes to cross the railroad upon the two crossings mentioned until the date last referred to.

In October, 1875, the Connecticut Central Railroad Com-

pany mortgaged its railroad, including this land, to secure certain bonds, and in 1887 the treasurer of the state foreclosed the mortgage, and the title became absolute in him. In December, 1887, the state treasurer by good and sufficient deed conveyed all the right, title and interest that formerly belonged to the Connecticut Central Railroad Company in said railroad and in said land to the plaintiff corporation, which has ever since owned and operated the railroad over the land in question.

In the year 1888 a new highway was laid out and opened for public travel, extending from Main street easterly along the south line of the defendants' land, which highway crosses the railroad in the immediate vicinity of the southerly crossing previously maintained by the railroad companies for the use of the defendants, but since that time it has not been used by these defendants.

The other farm crossing near the center of the above tract of land remained, and was used by the defendants as before, until a short time before the commencement of this suit, when the plaintiff took up the crossing and erected a fence on the sides of its railroad tracks to prevent the defendants from crossing. But the defendants insisted upon their right to use the crossing near the center of their land, and tore down the fence so erected by the plaintiff, and have since continued to use it as before.

In the proceedings to condemn the land for railroad purposes no reference of any kind was made to the farm roads which William G. Comstock, Sen., had been accustomed to use on the land, nor to any future use of the same.

The court further finds that "no evidence was offered to prove that the use of said farm crossing" (referring to the central one,) " as it had been heretofore used by the defendants, was unreasonable or inconsistent with the plaintiff's use of said strip of land as it has been accustomed to operate its railroad, or that the use of the farm crossing by the defendants will in the future interfere in any way with the use of the same land by the plaintiff corporation for railroad purposes."

The general question arising upon these facts is, whether the defendants have a right to have the crossing in question kept open and maintained for their use?

Upon what foundation can any such right rest in this case? The defendants do not claim to have gained a right to cross by adverse user, for the time is inadequate to confer such a right; neither do they claim a right of way of necessity, for in 1888 a highway was laid out and opened for public use along the south line of the land in question, and it is obvious that any point on the entire tract may be reached from this highway without crossing the railroad at all, and the most remote point is distant only forty-four rods.

The argument in behalf of the defendants, although stated in different forms, seems to be based principally upon the assumption that when land is taken under the power of eminent domain for railroad purposes, no exclusive right to the possession and control is thereby vested in the railroad company, but that there is left in the original landowner, not only the fee subject to the easement, but also a right to use the same land in any manner not inconsistent with the railroad purposes for which the land was condemned, and that the question whether the landowners' proposed use is inconsistent or not with the use for which the land was condemned, is a question of fact to be determined by the evidence in the particular case. The special finding in the case at bar, that no evidence was offered to show such inconsistent use, renders it probable that the trial judge may have accepted this idea as the basis of his judgment for the defendants.

The defendants cite *Imlay* v. *Union Branch R. R. Co.*, 26 Conn., 255, as supporting their contention. It does not seem to us to furnish such support. The question in that case was whether the location of a railroad upon a public highway amounted to the imposition of a new servitude, in addition to and distinct from the other, so that the owner in fee was entitled to compensation therefor. The able discussion of the question by STORRS, C. J., was directed solely to the point that a taking of land for railroad purposes was

a very different thing from a taking for highway purposes, and the conclusion reached was that on that account the landowner was entitled to compensation. In the argument for the defendants in that case as in this, the rights retained by the landowner after condemnation of his land for railroad purposes were illustrated by reference to the rights of an adjoining owner in the highway. The opinion in that case shows that such an argument must be misleading. But it may be suggested that the object of citing that case was to show the principle there laid down and applied, namely, "that when land is condemned for a special purpose, on the score of public utility, the sequestration is limited to that particular use. Land taken for a highway is not thereby convertible into a common; as the property is not taken, but the use only, the right of the public is limited to the use— the specific use for which this proprietor has been deprived of a complete dominion over his own estate."

We have no fault to find with the principle here laid down, but the question recurs—what are the purposes for which land is condemned by a railroad company, as in this case? To us it seems obvious that there is little analogy between the case of a highway and a railroad, but in most respects there is contrast rather than analogy, for in the case of a highway the use is general and open to all, including the adjoining landowner as part of the public, but the public have no exclusive right to occupy any particular part or put any permanent structure upon the way. It is taken simply for public travel over it, while on the other hand a taking for railroad purposes is necessarily peculiar, permanent and exclusive. This scarcely needs other demonstration than that addressed to the eye from the mere appearance of a railroad, with its level grade, often far above or below the general surface of the adjoining ground, with its iron rails firmly laid above and upon the projecting cross-ties adapted solely to one special mode of conveyance—to vehicles of immense weight, speed and momentum, and to agencies for locomotion of the most hazardous kind.

Our statutes that require all railroad companies (under

certain qualifications) to build continuous fences on both sides of their roads, implies that their possession is exclusive and that adjoining landowners have no greater rights than others.   For, if the law is as claimed, then the right of the landowner to make entry on the track would not be confined to regular places, but he might cross anywhere along the line of his land and might travel lengthwise as well as crosswise, unless indeed the court should first determine, as matter of fact, that the proposed use would interfere with the operation of the railroad.

It cannot be that the question is one of fact.   If so, there would be no rule at all that could be relied upon.   It would vary as often as a case arose with the adjoining owner.

In view of the responsibility of railroad companies for safely carrying persons and property and the great hazard to human life and property from obstructions on the track, the power to exclude every one from the railroad limits must be left, as matter of law, absolutely with the officers of the company, who are immediately responsible, subject only to such state supervision as may be deemed expedient. And such is the established doctrine as declared by a general consensus of legal authority.

REDFIELD, C. J., says, in giving the opinion of the court in *Jackson* v. *Rutland & Burlington R. R. Co.*, 25 Verm., 159 :—" The right of a railway company to the exclusive possession of the lands taken for the purposes of their road differs very essentially from that of the public in the land taken for a common highway.   The railway company must, from the very nature of their operations, in order to the security of their passengers and workmen and the enjoyment of their road, have the right at all times to the exclusive occupancy of the land taken, and to exclude all concurrent occupancy by the former owners in any mode and for any purpose.   It is obvious that the right of the railway to the exclusive occupancy must be for all the purposes of the roads much the same as that of an owner in fee."   The Supreme Court of Massachusetts says :—" The right acquired by the corporation, though technically an easement, yet requires for its enjoy-

ment a use of the land permanent in its nature and practically exclusive." *Hazen* v. *Boston & Maine R. R. Co.*, 2 Gray, 580.   The Supreme Court of Vermont says:—"Those who control, manage and operate the railroads in the country should have the full and exclusive possession and control of the land taken for the legitmate use of the road within the lines thereof and embraced within the fences that by the laws of this state the railroads are required to keep upon the sides of their road.   Although the right of the railroad company is but an easement, and not a fee, this does not preclude their having the sole and exclusive possession of the land while in the exercise of that easement.   The fact that upon the abandonment and surrender of their road and charter the land would revert to the former owner, does not curtail their right to its exclusive use if necessary. . . . . . Everything that tends to increase the danger of travel upon our railroads, public policy requires should be prevented if practicable. . . . . . The railroad companies are always liable to suffer severely in their property in cases of accident.   They are also, to a certain extent, liable to others for injuries resulting from such causes, and to this liability they should be strictly held. At the same time we think they should have such sole and exclusive control of the land within the lines of their road as shall enable them so to keep it as to exclude all probability of any accident resulting from any outside interference with such possession." *Troy & Boston R. R. Co.* v. *Potter*, 42 Verm., 274.   The Supreme Court of Massachusetts says, speaking of the rights of a railroad company to the land condemned by it for railroad purposes:—"The mode of occupation and the degree of exclusiveness necessary or proper for the convenient exercise of its franchise, are within the absolute discretion of the managers of the corporate functions. They are the sole judges of what is proper or convenient as means for attaining the end and performing the service for which the corporate franchises were granted." *Proprietors of Canals & Locks* v. *Nashua & Lowell R. R. Co.*, 104 Mass., 9.

In further confirmation of our position we also refer to *Hayden* v. *Skillings*, 78 Maine 413; *Conn. & Passumpsic*

*Rivers R. R. Co.* v. *Holton,* 32 Verm., 43; *Boston Gas Light Co.* v. *Old Colony & Newport R. R. Co.,* 14 Allen, 444; *Presbrey* v. *Old Colony R. R. Co.,* 103 Mass., 1; *Brainard* v. *Clapp,* 10 Cush., 6; *Fayetteville R. R. Co.* v. *Combs,* 51 Ark., 324, 328; *Williams* v. *Michigan Central R. R. Co.,* 2 Mich., 259; *Burnett* v. *N. & C. R. R. Co.,* 4 Sneed, 528; Mills on Eminent Domain, § 208; Pierce on Railroads, 159, 160; 3 Wood's Railway Law, 1544.

The suggestion that the right of crossing was never condemned by the railroad company because the farm roads previously existed at the same place and had long been in use by the owner of the land, hardly requires a separate answer. Mr. Comstock was the sole and absolute owner in fee, and in possession of one and only one entire estate. There was no easement, no dominant and no servient estate, and the taking without exception or qualification necessarily took the whole for railroad purposes. The fact that the land had long been used for a farm road has no more materiality than would the fact that a special crop had always been cultivated upon it. Neither is there any legal significance in the fact that the railroad company had for several years kept open the crossings under the circumstances mentioned in the finding.

Only one other matter remains which it is important to consider, and that is the effect upon this action of a statute passed in 1889, and found on pages 81 and 167 of the session laws of that year. It is entitled "An act to prevent arbitrary removal of farm crossings by railroad companies." The second section, which is all that needs to be considered in the present suit, is as follows:—"No railroad company shall remove, obstruct or otherwise interfere with any such crossing, until the legal right so to do shall have been finally settled by a judgment or decree of the Superior Court in the county where such crossing is located; and any railroad company claiming to be aggrieved by such crossing may bring its complaint against the person or persons owning the land adjoining such crossing, to said Superior Court, which court shall hear and determine the rights of the parties, subject to the right of appeal as in other civil actions. Any railroad

company which shall violate the provisions of this section shall forfeit for every such violation the sum of one hundred dollars, which may be recovered in an action upon this statute by any person aggrieved thereby."

It seems manifest that one principal object of this section of the statute was to compel railroad companies, in all cases to which it is applicable, to bring a suit and appeal to the courts to settle such controversies, instead of arbitrarily taking the remedy into their own hands and asserting their rights by brute force.

The plaintiff then, having brought a proper suit before the tribunal named in the statute, surely cannot be turned out by the same statute that requires it to come into court. Any objection therefore founded upon this statute renders it indispensable to show that the present suit is not such an one as the statute contemplated. And here the only possible question that can be raised is, whether the statute is exclusive as to the form of remedy and requires an action at law instead of a proceeding in equity.

But what foundation is there for such construction? The statute is silent as to the form of remedy. It simply uses the term "complaint," which is just as applicable to equity as to law. Section 28 of the practice act in terms provided that the word "complaint" should be substituted, not only for "declaration," but also for "petition" or "bill in equity." There is nothing then in the prescribed mode of coming into court that would exclude the present proceedings. Is there any clue in the action required on the part of the court upon the complaint? The statute characterizes the action on the part of the court as a judgment or *decree*. The word "decree" applies peculiarly to the final determination of a court of equity as distinguished from that of a court of law. This alone would seem to justify us in construing the statute as referring to complaints in equity as well as at law.

But it may be suggested that the statute also speaks of settling a legal right; but this is not inconsistent with the view we have taken, for a legal right may be settled by a decree in equity. Where, as in the case at bar, the jurisdic-

tion of a court of equity is invoked in aid of a legal right, upon the ground of averting irreparable injury, the court first determines the legal right, and if that is free from doubt and the exigency requires it, the court will at once intervene and protect the right by decree of perpetual injunction.

Although a complaint in trespass was open to the plaintiff, yet the injury was liable to prove a recurring one, and to be attended with great loss of property and of life, so that the use of a preventive remedy by injunction was eminently proper.

As the finding fails to give the particular date when the railroad company obstructed the crossing by the erection of a fence, it may be well to state that no claim was made that it was after the passage of the act last referred to, and it will be seen that the defendants' answer to the amended complaint gives the date as August 14, 1888; so that there is no foundation for any claim that the railroad company violated the statute by first asserting its rights in the manner indicated.

There was error in the judgment complained of and it is reversed.

In this opinion the other judges concurred.