J. L. WILMOT *v.* YAZOO & MISSISSIPPI VALLEY RAILROAD CO.

1. RAILROADS. *Right of way. Servient estate. Destruction of crops.*

The destruction by a railroad company of crops growing on its right of way creates no liability in favor of the owner of the servient estate, since the company's occupancy of its right of way is practically exclusive and he has no right to cultivate crops thereon save by its consent.

2. SAME. *Pleading. Trespass. Limitations. Easement.*

A replication, in trespass, that plaintiff had been in actual adverse and continuous possession for the period of ten years next preceding suit is a good answer to a plea setting up an easement.

3. SAME.  *Special demurrer.*  *Code* 1892, § 703.

A replication setting up adverse possession against an easement is not demurrable under code 1892, § 703, abolishing special demurrers.

4. RIGHT OF WAY.  *Limitations.*  *Adverse possession.*

The adverse possession that will defeat the easement of a railroad company in the land constituting its right of way, on the expiration of the period of limitation, must have been distinctly manifested by acts hostile to and inconsistent with the occupancy of the company, as by fencing, etc.

5. PLEADING.  *More replications than one.*  *Affidavit of merits.*  *Code* 1892, § 692.

Under code 1892, § 692, more replications than one can only be filed by leave of court, based on an affidavit of merits.

FROM the circuit court of Washington county.

HON. F. A. MONTGOMERY, Judge.

Wilmot, the appellant, was the plaintiff in the court below. The railroad company was defendant there. Wilmot sued the Yazoo & Mississippi Valley Railroad Company in an action of trespass in the sum of $5,000 for the alleged wilful and wanton destruction, in June, 1896, of his crops of cotton growing upon land immediately adjacent to the roadbed of said defendant company and on either side thereof. And in a second count the plaintiff claimed of the defendant the sum of $5,000 for entering in June, 1896, plaintiff's plantation and laying its cross-ties and iron rails across the land of plaintiff, and of disseizing him of that portion thereof whereon lies the cross-ties and rails of said railroad.

The defendant pleaded that, prior to the grievances complained of, the defendant had acquired title to a strip of land one hundred feet wide through plaintiff's land by a deed from Wingfield, a former owner thereof, to defendant's predecessor in the title, for the construction and operation of a railroad thereon, and upon this right of way the defendant laid down cross-ties and rails, and that the crops destroyed by the defendant were growing upon this right of way.

The plaintiff demurred to this plea on the ground that it did not show a use of the land inconsistent with the estate conveyed and the proper operation of the railroad, and the court overruled the demurrer. Plaintiff thereupon replied that for more than ten years before the bringing of suit, and of the commission of the trespasses complained of, and at the time of said trespasses, said plaintiff had been in the actual, adverse and uninterrupted possession of the land upon which the crops were growing when cut down and destroyed as set forth in said plea, and claiming to be the owner thereof. The plaintiff asked leave to file four other replications, unsupported by the affidavit of merits required by § 692, code 1892, which the court refused to allow. The defendant demurred to the replication, setting up the statute of limitations, on the ground that the matters therein contained related only to the plaintiff's ownership of the land and did not affect defendant's easement. The demurrer was sustained, and, the plaintiff declining to reply over, judgment was given for the defendant, and the plaintiff appealed.

*J. II. Wynn,* for appellant.

The court erred in overruling the demurrer of the appellant to the appellee's special plea. The appellee acquired by the deed only an easement "for the purpose of constructing and operating a line of railroad and to do such things as were necessary and convenient in constructing and operating said road." The special plea of the appellant sets up that the crops were cut because "it deemed it or considered it inconvenient and unsafe in the operation of the road to have cotton grown on the right of way," etc., regardless of whether or not it was inconvenient or unsafe in fact. The appellee contends that its right of possession is exclusive, dependent alone upon its wishes in the matter. We say that such is not the law. Beach on Railroads, 789; Lewis on Eminent Domain, sections 586, 587.

Appellee's right is measured by its deed, and this deed does not say that appellee shall do such other things as it may deem necessary and convenient, but such as are necessary and convenient.

The position of appellee makes its will or whim supreme and denies an appeal to either court or jury. Suppose the appellee should consider it convenient to sod its right of way with cocoa grass, or Bermuda grass, or Johnson grass, then, under its contention, it would have a right to do it. Lewis, in his work on Eminent Domain, says that it is a question of fact whether the necessities or conveniences of railway companies require exclusive possession to be determined just like any other fact. But the appellee says not. The deed to appellee conveys only an easement.

An examination of the paper filed with the plea, which the railroad sought to induce the appellant to sign, shows that it is not in fact necessary for the convenient operation of the railroad that the land should not be planted in cotton, but it wanted to derive a consideration for the use of this land which it had no right to. It had no right to rent or lease the land, but it sought to impose on appellant the duty of keeping up its fence for the use of the land.

I am not going out of the record to say that the court knows that throughout the State of Mississippi nine-tenths of the tillable lands along railroad rights of way are cultivated, and, when cultivated in cotton, are less liable to fire than the grass growing on the uncultivated lands; and, furthermore, that where lands are not cultivated they are allowed to grow up in grass. As a fact it is not more convenient or safer to have the lands uncultivated, and the appellee, by an expression of its will, cannot make that unsafe which is safe, or make that inconvenient which is convenient.

But if I be mistaken in the foregoing, the demurrer sets up that the appellant was in the possession of the land at the time of the trespass by the appellee. This being the case, no

matter what were the rights of the appellee under its deed, it had no right to forcibly destroy appellant's crop. These crops appellee allowed to be planted, and it waited until June before destroying them. If its contention, that it had a right to exclusive possession, be sound, why did it not enjoin the appellant, or prosecute him for trespass? In Sedgwick & Wait on Trial of Title to Land, it is said (sec. 94): "The forcible entry of the owner himself, and still more the entry of any other person, whether forcible or not, is unlawful."

The court erred in sustaining the demurrer of the appellee to the first replication of the appellant. This replication sets up that for more than ten years prior to said trespass appellant had been in the actual, adverse and uninterrupted possession of the land upon which the crop was growing, claiming to be the owner thereof. This vested title to the land on which the cotton was growing, regardless of the deed which appellant had obtained from Wingfield. *Jones* v. *Brandon*, 59 Miss., 585.

Appellee contended that the allegations of said replication did not exclude the easement of the appellee. But the court will see that said allegation set out absolute ownership and continued possession, and called for a denial.

*Jayne & Watson*, on the same side.

Counsel for appellee dwells at length upon the holdings of the courts concerning the liability of railroads for fires communicated from rights of way, and points out that the negligence complained of in that class of cases is an accumulation of inflammable material on the rights of way. They do not seem to recall the fact that, in every case of that class, it became an issue of fact for the jury as to whether the material accumulating on the right of way was inflammable at the time of the fire, or was the cause of the communication of the fire. The special plea of appellee does not aver that, as a fact, the crops cut down were such as to endanger the operation of its railway,

but, on the other hand, alleges that it "considered it inconvenient and unsafe in the management and operation of its railroad," gave notice, etc.   In this case it asked the court to hold a line of conduct persisted in by the holder of the fee to be a menace to the safety and convenience of the operation of their railway, because it is of opinion that the same is such a menace. That is to say, it requests the court to give the force of law to such opinion, without any allegation as to the facts upon which the opinion was based.   To illustrate: Suppose a suit has been brought against this railway for setting fire to property of appellant adjacent to its right of way, and the declaration alleged that the fire was communicated by growing crops, would not appellee have defended on the ground that the nature of the crop, and that the stage of its development at the time—to wit, the month of June—would have rendered it impossible for fire to have thus been communicated, the crops then being green? The court will see from this that, as a matter of fact, at the time the crop was cut it could not have been a menace to the safety and convenience of the operation of appellee's railway. But the trial court gave full force of law to the opinion of the appellee as to the danger arising from the crop in the month of June, when the very nature of the crop, and the stage of its development possible in that month in our climate, demonstrates the fallacy of such an opinion.

Suppose that the appellee had been driving along the right of way in question, and appellant had forcibly ejected him therefrom, and destroyed his conveyance and injured his team, and, thereupon, appellant had brought suit for damages resulting from such act; that the appellee defended on the ground that, in its opinion, the act of appellant endangered the convenience and safety of the management of its railway.   Would the court say judicially that the mere opinion of appellee was sufficient to justify its act, or would the facts as to the time, manner and course of appellant's travel be necessary subjects for consideration by the court, in order that it might

adjudge as to whether there was any danger or menace to the operation of appellee's railway?

We think that the plea of appellee should have averred that the crops destroyed constituted a menace at the time of the destruction thereof, to the operation of its railway, and upon such plea an issue of fact could have been formed. In this case appellee took the law in its own hands, and did an act which tended to a breach of the peace. It could only have justified that act by showing that the crops destroyed at that time rendered the operation of its railway unsafe. If it could not show that to be a fact, the act of cutting the crop was wrongful. The proper course for the appellee to have pursued was the pacific method of resorting to the courts of justice for redress in dispossessing appellant of the land.

*Mayes & Harris*, for the appellee.

It is not a disputable proposition that a plea of title acquired to a right of way is a good response to a demand for damages for laying down railway track on a right of way, the title of which has been acquired. And we shall, therefore, consider it in respect to its sufficiency as a reply to the first count alone. A right of way once acquired by a railway company is dedicated primarily and above everything else to the service of the railroad. Even in those instances in which the original owner retains a servient estate or interest, that interest is, and in the nature of things must be, subordinated to the use of the right of way by the railroad.

One of the duties of a railway company, which is indicated in all of the books, is that of keeping its right of way free from accumulations of inflammable material. We need not enter upon a discussion of the question as to whether, if that duty be not discharged, and inflammable material be allowed to accumulate, it constitutes negligence *per se*, or only matter from which a jury may find negligence. Either way, it is the duty, so declared by law, and the neglect of that duty is a thing for

which the railway company can be held responsible in damages
by parties whose property is burned thereby, and, of course,
by passengers and others who should be physically injured by
the wrecking of trains caused thereby.    It is impossible, as a
legal proposition, that it can be the duty of the railroad com-
pany to keep its right of way clear of inflammable material,
and yet that, at the same time, it shall not have the right to do
so.    The books are full of cases in which parties whose prem-
ises lie adjacent to railroad tracks, claim damages on the ground
of fires communicated from rights of way, the point of negli-
gence consisting in this very fact of the accumulation of inflam-
mable material.    All of these cases necessarily contain as a
postulate the proposition which we are now discussing—that it
is the duty and the right of the railway company to keep its
right of way clean.

Our position is, in brief, then, that the duty of the railway
company to keep its right of way clean carries with it, as a
necessary correlative, the right to keep them clean, and the
right to keep them clean includes the right to keep them clean
as against the act of the adjacent land proprietor, as well
as against the spontaneous productions of nature.    It cannot
be that these important questions are to be determined by such
considerations as the distinction between one sort of crop and
another.    Counsel for appellant says that the production of
cotton has a tendency to keep land clean.    We doubt if this
court will take judicial knowledge of any such proposition, or
knows it as a fact.    A field of cotton, especially when in lint
and grown up with grass, as it frequently does in the fall, after
the crop is laid by, may be very highly inflammable.    But this
question cannot turn on the difference, as we said above, be-
tween one crop and another.    If the landowner has a right to
plant cotton, he has a right to plant corn; and if corn, hay;
and if hay, any sort of hay; and if he has a right to plant hay
artificially, he has the right to let the land grow up in natural
grasses; and the whole proposition is bound to run out thus:

that he has the right to have the soil appropriated to the production of any such growth thereon as he sees proper to have it produce, and the tendency of counsel's argument is to nullify the whole doctrine of responsibility for the accumulation of inflammable stuff. In fact, that seems to be about the whole case. The railroad company seems to have concluded that the cultivation of this land was dangerous as having a tendency to start fires, and they put the hands there and chopped down the stuff on their right of way, doing the very thing which, as we understand it, the law would have held them responsible for not doing if any damage had resulted from their omission.

We respectfully submit that counsel for the appellant, in his brief and in his position, confounds two propositions. He argues that the possession of the railroad company of its right of way is not exclusive of the interest of the landowner and his right of enjoyment. This argument overlooks altogether the fact that the inevitable conclusion, if the contention of the appellant be sound, is that the enjoyment of the right of way by the landowner is exclusive of that of the railroad. What is the effect here? It is to hold the railroad company responsible not only for damages, but actually in punitory damages, because it has not submitted to have the right of way occupied by crops planted by the adjacent landowner. Of course if the court should hold that the adjacent landowner has a legal right to occupy the right of way by crops, such a decision could mean nothing else than that it would have the right to exclude the railroad company from the use of the lands so occupied, because it is out of the question to talk about a crop and a railroad actually occupying the land at the same time.

Each has a right modified by that of the other. It is a peculiar situation, one altogether *sui generis*, growing out of the nature of things, the peculiar character of railroad property. It is possible that the railroad company cannot hold the landowner, in such a case, as a trespasser for planting a crop on the right of way. It is certain that the landowner cannot hold

the railroad company as a trespasser for using the right of way; and, we submit, neither can the landowner hold the railroad company as a trespasser for cleaning off the right of way, even if in so doing it he destroyed crops planted by the landowner on such rights of way. Neither party can be treated as a trespasser by the other in this matter. If the landowner sees proper to pitch a crop on the right of way, he does it taking the chances that the railroad company will cut it off. The situation is somewhat similar to that of a tenant for years whose term expires in the midst of a crop season, but nevertheless goes ahead and pitches a crop which he has no legal right to have matured on the land, and consequently has no right to emblements. This, we submit, is the confusion which exists in counsel's brief; the proposition that his client is not a trespasser in planting on the right of way does not at all lead to the conclusion that the railroad company is a trespasser in cleaning off its right of way, even although in so doing damages are inflicted upon the plaintiff. It is a case of *damnum absque injuria*.

The second point of error assigned is the action of the court in sustaining the demurrer of the defendant to the plaintiff's replication number one. The learned counsel for the plaintiff below notices this assignment of error in his brief on the concluding page to the extent of six or seven lines only. We shall not consume the time of the court to any great extent upon it. The demurrer to the replication expresses the view of the defense in regard to the matter. The replication is the ordinary form of replication, as the demurrer shows, by which title is claimed by adverse possession, and the replication was not applicable in this case, nor does it constitute any response to the pleading in this case. The plea to which it was offered set up a right of way enjoyed by the railroad company on the *locus in quo*. It did not in any way challenge the title of the plaintiff to the lands in question in general, so that the declaration and the plea presented the ordinary case of a farm subject to an ease-

men', the easement b :ing consistent with the ownership ulti-
mate of the plaintiff.   If the plaintiff meant to deny the de-
fendant's right of way, the method of doing so was perfectly
plain and simple by a traverse, instead of which a replication
is offered, the substance and effect of which is simply to set up
title in the plaintiff to the lands in question, which title was
consistent to the defendant's title, and, in fact, constituted the
basis of the defendant's title.

We have already pointed out that, in a situation like this,
the possession and interest of each is neither exclusive of
the other, although in a general sense the possession of the
land owned is exclusive as against the world.   If the plaintiff
in this case had meant to allege in his plea that his title
was exclusive as against the defendant, it ought, because of
the peculiar relations of the parties and the peculiar nature
of the property, not to have stopped with alleging adverse
possession in general terms, but ought to have alleged adverse
possession as against the defendant.   The pleadings must, of
course, be taken most strongly against the pleader, and, where
adverse possession is relied upon, it must be affirmatively shown.

TERRAL, J., delivered the opinion of the court.

This is a contest between the railroad company and the
owner of an adjacent farm as to their respective rights in the
right of way of the defendant's road.   The appellant claims
the right to cultivate the right of way so far as it is not in the
actual occupation of the company, and the company denies such
right.   The deed granting the right of way was executed in
April, 1883, by Wingfield, the then owner of the farm, the
defendant's assignor, and Wingfield, for a valuable considera-
tion, granted, bargained and sold a right of way over his land
'' to have and to hold, to said assignor and the assigns forever,
for the purpose hereinafter specified, and for none other—that
is to say, for the purpose of building, constructing and operat-
ing a line of railroad on said right of way.''

According to the principles of the common law, the deed of Wingfield, by implication, reserves to° the grantor all uses of the land through which the right of way is granted, not inconsistent with the purposes of the grant, and should the right of way be abandoned or lost the unincumbered fee would revert to the grantor or his assigns.

The duties imposed by law upon a railroad company of safely carrying persons and property and of protecting employes and other persons lawfully upon the right of way from dangers arising from any obstruction or hindrance of the servants of the company in the performance of their duties, and the responsibility laid upon the company for the performance of such duties, require the right and power in the officers of the company of excluding at their pleasure all persons from the right of way. The occupancy of the right of way by the railroad company is practically exclusive, and the owner of the servient estate could cultivate it only by the consent of the railroad company. *Railroad Co.* v. *Comstock*, 60 Conn., 210; *Hazen* v. *Railway Co.*, 2 Gray (Mass.), 580; *Brainerd* v. *Clapp*, 10 Cushing (Mass.), 12; *Hollingsworth* v. *Railway Co.*, 63 Iowa, 444; *Railway Co.* v. *Potter*, 42 Vt., 275; Randolph on Em. Dom., sec. 215; Elliott on Roads and Streets, sec. 948.

The demurrer of the plaintiff to the defendant's special plea setting up its easement was properly overruled.

The action being trespass, and the easement being specially pleaded, the replication of the plaintiff that the defendant had lost the easement by nonuser, and that the plaintiff had acquired it by ten years' adverse possession under claim and color of right, was a proper pleading, and presented a good answer to the special plea. Had the replication been ill at common law, it was not subject to a demurrer under the provisions of § 703, annotated code 1892. As land may be acquired by adverse possession for ten years, it looks to us to be consistent with the principles of law that such possession would extinguish any servitude in the land so held.

Such occupancy by the owner of the fee must be strictly exclusive, and under distinct color of right, in order to bar the entry of the railroad company. It should distinctly appear that the owner of the fee is not attempting to exercise his use of the land in harmony with the right of the railroad company, but his occupancy must be distinctly hostile to that of the company. If the owner of the servient estate should cultivate any part of the right of way, under the notion that he was only enjoying a legal right not inconsistent with the use of the way by the company, such cultivation, however long continued, could not ripen into a title to the right of way, or to the part so cultivated; but if he should fence a part of the right of way against the company itself, and claim, to the knowledge of the company, a right to use it as his own, discharged of servitude of the company, or under circumstances that necessarily gave the company notice of such claim, and should continue such possession for ten years, the company would be debarred of all right. *R. R. Co.* v. *Houghton*, 1 L. R. A., and notes; *Horner* v. *Stilwell*, N. J. L., 307; *Ward* v. *Ward*, 7 Exch., 837; Wash. on Easements, *p. 551; *Curran* v. *City of Louisville*, 83 Ky., 632; *Kuecker* v. *Voltz*, 110 Ill., 264; *Day* v. *Walden*, 46 Mich., 575; *Snell* v. *Levitt*, 39 Hun, 229; *Smyles* v. *Hastings*, 22 N. Y., 224.

The demurrer to the replication should have been overruled. The four replications offered to be filed by the plaintiff were properly rejected by the court. Under § 692, annotated code, more replications than one can be filed only when verified by oath, and these were not verified. The third replication was the first repeated; the others would have raised immaterial issues. *Hartford* v. *Green*, 52 Miss., 338.

*Reversed and remanded.*