Scott *v.* Mississippi Eastern Ry. Co. *et al.*

(Division B.   April 7, 1924.)

[99. So. 505.   No. 24046.]

Adverse Possession. *Vendor and purchaser.   Railroad using right of way ten years held entitled to width so used; court may decide question of fact as to width.*

Where a suit is brought against a railroad company for damage to a tract of land by reason of the operation of a railroad through it, and where complainant's chain of title shows a right of way was reserved in the grant to him, though not sufficiently described, if the railroad be in actual existence over such land at

135 Miss.—4.

the time of such conveyance, the plaintiff does not acquire title to the right of way, and the court may decide the question of fact as to what width was actually used, and, if the railroad has used it for ten years or longer before the suit, it has title to the width of the right of way used by it.

APPEAL from chancery court of Clarke county.

HON. G. C. TANN, Chancellor.

Suit by H. J. Scott against the Mississippi Eastern Railway Company and another. From a decree dismissing the bill, plaintiff appeals. Affirmed.

*H. F. Case* and *Marshal W. Amis,* for appellant.

At the outset we wish to say that we do not think that the record makes out any case against the Long-Bell Company, and we believe that the case should be affirmed as to the Long-Bell Company. We also wish to admit at the outset that we believe that the Mississippi Eastern Railway Company has acquired title by prescription to such right of way as it has been in actual possession of, for a period of ten years, and that we are not entitled to any injunction against the use of such right of way.

We do contend however that the appellant is entitled to a judgment against the Mississippi Eastern Railway Company for the statutory penalty for cutting the twenty-five trees, and also for an injunction against the Mississippi Eastern Railway Company restraining it from using or claiming as a part of its right of way across the lands of appellant any part of said land except such as it has acquired title to by actual, adverse possession for a period of ten years, to-wit; a strip not exceeding twenty-five feet on each side of the center line of its main line track. To these two propositions we will address all our argument.

The case of *Therrell* v. *Ellis,* 83 Miss. 494, 35 So. 826, lays down five things which a plaintiff must show in order to entitle him to recover the statutory penalty for cut-

ting trees.  It appears here that the land and the trees both belonged to appellant subject only to reservation of the right of way.

A right of way is an easement only and not title to the land.  *Bonelli* v. *Blakemore,* 66 Miss. 136.  A railroad will be held to have taken an easement merely when the deed of conveyance expressly grants a right of way. *East Alabama R. Co.* v. *Doe,* 114 U. S. 340, 5 Sup. Ct. 869, 29 U. S. (L. Ed.) 806; *Abercrombie* v. *Simmons,* 71 Kan. 538, 81 Pac. 208, 114 A. S. R. 509; and notes in 1 L. R. A. (N. S.) 806; and 66 L. R. A. 39.

This being true the title to every tree and every blade of grass, and every grain of sand on that land was vested absolutely in H. J. Scott subject to the right of the owner of the said easement to use the right of way for the purposes named.  As to every other person his title was absolute without qualification, and any other person cutting any of said trees was liable to Scott as a trespasser.  *Brahan* v. *Telephone Company,* 97 Miss. 326.

The record wholly fails to show any title in the Mississippi Eastern Railway Company to the right of way as reserved in the deed to Guthrie or as granted to the Mississippi Lumber Company.  It is clear, therefore, that the Mississippi Eastern Railway Company has no record title to any right of way or easement across the lands of appellant, and so its only title to any such easement must be by prescription.  In *Ryan* v. *G & S. I. R. R. Company,* 62 Miss. 162, the court applied the doctrine of *pedis possessionem* to the railroad claiming title to its right of way by prescription where its only color of title was a void condemnation proceeding which did not specify the width of the right of way.  In the case now before the court the Mississippi Eastern Railway Company has no color of title whatsoever and so the reason for applying the doctrine of *pedis possessionem* is even stronger. The limit of the right of the Mississippi Eastern Railway

Company is to that strip of land which they had cleared and used continuously and uninterruptedly for a period of not less than ten years.

This court in view of the proof submitted cannot but come to the conclusion that the land upon which these trees were standing had not been cleared for some seventeen to nineteen years previous to August, 1921, for the trees actually cut showed that some of them were at least that age, and other trees of larger size left standing showed that it had not been cleared for a long time prior to seventeen years before. However, taking it only for seventeen years this shows that the particular land from which these trees were cut had not been cleared since 1904, and the Mississippi Lumber Company first acquired the right to build the railroad in 1900 and the Mississippi Eastern Railway was first organized in 1903. It is therefore manifest that there had been no clearing of this particular land by the defendant for ten consecutive years. We therefore submit that they had not acquired any title to or easement over the particular land upon which these trees stood, but that the fee-simple title thereto was absolutely in H. J. Scott.

*S. H. Terral,* for appellees.

As J. M. Guthrie never acquired title to the right of way in question, manifestly he could not convey it to Rouse, nor could Rouse convey to H. J. Scott for the same reason. "Property can never be conveyed by reservation, yet that is what is attempted to be done if the contention of appellant is sustained." *Canning Company* v. *Ott,* 84 Miss. 737.

Appellees could not be guilty of wilful trespass insofar as appellant is concerned because the latter never did acquire title to the right of way in question. Certainly no railroad could be built or maintained if trees were not to be cut down over rights of way. The chancellor found that appellees were not guilty of wilful trespass in

cutting the trees and his decision is binding upon this court because it is not against the overwhelming preponderance of the evidence. *Hilbun* v. *Hilbun,* 98 So. 593.

While a right of way is an easement, yet it could be conveyed or withheld as the owner of the land might see fit. Section 2762, Code of 1906, section 2266 of Hemingway's Code.

The authorities in appellant's brief on the question of easement are not applicable. The Mississippi Eastern Railway track had been built across the land in question many years prior to the time that appellant acquired it and he knew of the railroad right of way over said land according to his own testimony. The Mississippi Eastern Railway Company had a deed to the right of way in question and had cut out a right of way from seventy to one hundred feet wide across said land for many years, and therefore *Ryan* v. *G. & S. I. Railroad Company,* 62 Miss. 162, is not applicable. The G. & S. I. Railroad had no deed to the right of way in question and therefore it was limited to the right of way covered by its track, as it was relying upon adverse possession and claiming title under no one and was limited to the right of way it actually covered. The evidence in this case shows that the Mississippi Eastern Railway Company had been clearing a right of way over the land in question for many years from sixty to seventy and one hundred feet wide without any objections from the Mobile & Ohio Railroad Company, J. M. Guthrie or L. C. Rouse, its vendees.

In 14 Cyc. on page 1161, the following rule is laid down: "It is a familiar rule that when a right of way is granted without defined limits, the practical location and use of such way by the grantee under his deed acquiesced in for a long time by the grantor will operate as an assignment of the right." The finding of the chancellor is equivalent to that of a jury in the circuit court and unless his finding is contrary to an overwhelming weight of the testimony this court will affirm his findings.

*H. F. Case* and *Marshal W. Amis,* for appellant in reply.

The physical facts as to the sizes and ages of the trees cut, and those left standing, as to which facts there is no controversy in the record, show conclusively the extent of the clearing prior to August, 1921.

We fully appreciate the rule that this court will give great weight to the chancellor's finding upon disputed questions of fact. But as we understand it this applies only to the extent that the chancellor has a better opportunity to judge of the credibility of the witnesses and does not mean that this court will concur in his erroneous deductions arrived at from a given set of undisputed evidentiary facts. This record presents a given set of undisputed evidentiary facts on the decisive points in the case from which only one conclusion can logically be drawn. It therefore is not a case for the application of the rule above stated.

ETHRIDGE, J., delivered the opinion of the court.

The appellant filed a bill in the chancery court of Clarke county against the Mississippi Eastern Railway Company and the Long Bell Company, to enjoin them from further using and operating a line of railroad across the lands owned by the appellant described as the east half of the southwest quarter of section 6, township 2, range 16 east, less a lot in the southeast corner thereof owned by Flower Roberts, and for the statutory penalty for certain trees cut upon the said land.

It appears that the land was formerly owned by the Mobile & Ohio Railroad Company, which was represented in its land sales by the Alabama Land & Development Company as sales agent. The Alabama Land & Development Company entered into a contract with the Mississippi Lumber Company, the predecessor in title of the right of way of the Mississippi Eastern Railroad Com-

pany, by which contract the Mobile & Ohio Railroad Company conveyed certain timber and rights of way over its lands, including the lands now owned by the complainant. By the said contract the right of way over the land in question was not described with particularity as to the width of the right of way, but the general terms—
"A right of way for their logging railroad and roads over all of the lands embraced in this contract, and after land has been released as specified in clause 10 and 11, the right of way for the logging railroad shall be reserved as long as necessary for the operation of the milling plant of said second party."

In pursuance of this contract the Mississippi Lumber Company constructed a logging road on the above-described lands and operated its engines and cars thereover in logging their mill. The contract also provided that the rights might be assigned to any company which would not conduct the business on a lesser scale than the Mississippi Lumber Company. Afterwards the Mississippi Lumber Company incorporated the Mississippi Eastern Railway Company and conveyed to it its line of track, right of way, cars, and equipment, and also conveyed to the Long Bell Company its mill plants, timber, etc., which company was having logs for its mills transported over the said logging railroad by the Mississippi Eastern Railway Company; the said Long Bell Company being a large lumber manufacturing corporation engaged in the business on a much larger scale than the Mississippi Lumber Company. Afterwards the Mobile & Ohio Railroad Company through its agent sold to J. M. Guthrie the lands involved in this suit, reserving the right of way for the Mississippi Lumber Company's logging railroad in the following language:

"Excepting a right of way for the Mississippi Lumber Company's logging railroad as long as may be necessary for the operation of their milling plant."

At the time of the making of the said deed, the logging road was being constructed and was being operated

across the lands of the Mississippi Lumber Company.

On the 8th day of November, 1908, J. M. Guthrie and wife conveyed the said lands above described to L. C. Rouse, and in said deed failed to reserve the right of way of the said logging road or railroad. L. C. Rouse in turn deeded to the appellant Scott the said land on the 26th of July, 1920, failing likewise to reserve the right of way across the said land in favor of the railroad company. On December 22, 1921, the Farmers' Loan & Trust Company, which acquired title from the Mobile & Ohio Railroad Company, conveyed to the Mississippi Eastern Railway Company by release and quitclaim all the right, title, and interest which the said Farmers' Loan & Trust Company as trustee has or may have in the said lands, describing the lands in controversy and other lands, reciting certain exceptions reserved in the original conveyance.

The material allegations of the bill were denied by the answer of the defendants.

The plaintiff introduced proof of the cutting of thirty-five trees on a strip of the said lands lying between a distance of twenty-five feet from the center of the railroad track and a distance of thirty-five feet from the center of the railroad track, cut in 1921 by the agent of the Mississippi Eastern Railway Company. He also introduced proof that the original right of way was only cut for a distance of twenty-four and one-half feet from the center of the railroad track on either side of the said railroad track.

The defendant introduced evidence showing that it originally cut a right of way one hundred feet wide, and that the right of way had been frequently cleared of underbrush during a period far longer than ten years; one of the witnesses for the defendant testifying that he was section foreman of the said Mississippi Eastern Railway Company for thirteen years prior to the bringing of the suit, and that he had annually cut out the right of way for a distance of thirty-five feet from the center of the

railroad track on either side of the right of way. The defendant also introduced evidence that in a conversation with the appellant, its manager stated to him that the company owned a right of way one hundred feet wide, and that the plaintiff demanded that he produce written evidence thereof. It does not clearly appear whether this conversation occurred at the time of the purchase by the plaintiff or at the time the plaintiff was proceeding to clear out the right of way in which the timber involved in this suit was cut. It appeared for the plaintiff that he procured an abstract of his title at the time of his purchase. Plaintiff established by other witnesses the number of trees cut and their dimensions, and that they were within the ten feet, represented by the strip between the distance between twenty-five feet from the center of the railroad and thirty-five feet from the center of the railroad.

The chancellor on the hearing, dismissed the bill and declined to award the plaintiff any relief.

It is the contention of the complainant that the description of the right of way is void, and that the railroad company has only such part thereof as was covered by its tracks, or that part which it actually occupied and used during its operation, and that at all events he should have been awarded damages for the trees cut by the railroad company and described in the declaration.

The plaintiff's chain of title disclosed the granting of the right of way, and the actual situation was that a railroad line was contracted across the line and was in operation at the time of the purchase by Guthrie, his predecessor in title, and was also being operated at the time the complainant made his purchase from Rouse. This deed, constituting a part of his chain of title, recited the reservation of the right of way, so the right of way was not conveyed by the Farmers' Loan & Trust Company, or the Mobile & Ohio Railroad Company, or the Alabama Land & Improvement Company. Consequently the title to the right of way, whatever it was, did not pass to

Guthrie, and, as Guthrie had nothing to convey, the title did not become vested in Scott, and before Scott could claim title under his deed, or under that of Rouse, there must have been an acquirement of the right of way by adverse possession on the part of Rouse or of Scott, or of both taken together. There is no proof that either Scott or Rouse ever excluded the railroad company from the lands here involved, and the testimony of the railroad company is positive and direct that it claimed a right of way one hundred feet wide, and that they cut the right of way originally that width, but that subsequently, to save costs, they only cut the right of way seventy feet wide; that is, to say thirty-five feet each way from the center of the railroad track. If the right of way was originally cut one hundred feet wide, and subsequently kept cleared for a width of seventy feet, both Rouse and Scott must have known of it, or be charged with notice thereof, because a mere physical inspection would have disclosed this fact.

In *A. & V. Ry. Co.* v. *Joseph*, 125 Miss. 454, 87 So. 421, we held that the running of trains over the right of way is a user of its entire right of way, unless some part is inclosed by the adverse claimant and used adversely for the statutory period, and cited *Paxton* v. *Y. & M. V. R. R. Co.*, 76 Miss. 536, 24 So. 536, to the effect that:

"The railroad company does not lose its title to the right of way by mere nonuser, and the running of the trains is a constant assertion and occupancy of its right of way to its full extent as granted, so as to preclude a loss of it except by a strictly hostile possession of it for ten years."

We also cited *Wilmot* v. *Y. & M. V. R. R. Co.*, 76 Miss. 374, 24 So. 701, where the court said: "The duties imposed by law upon a railroad company of safely carrying persons and property and of protecting employees and other persons lawfully upon the right of way from dangers arising from any obstruction or hindrance of the servants of the company in the performance of their

duties, and the responsibility laid upon the company for the performance of such duties, require the right and power in the officers of the company of excluding at their pleasure all persons from the right of way. The occupancy of the right of way by the railroad company is practically exclusive, and the owner of the servient estate could cultivate it only by the consent of the railroad company.''

From the proof in the record the chancellor was warranted in reaching the conclusion that the railroad company cleared the right of way for one hundred feet originally, and thereafter occupied it adversely to the owner, certainly to the extent of thirty-five feet from the center of the track on either side, for the proscriptive period of more than ten years prior to the bringing of the suit. Consequently we must affirm the chancellor's finding.

*Affirmed.*