THE CONNECTICUT AND PASSUMPSIC RIVERS RAILROAD COM-
PANY *v.* BUCKLEY HOLTON.

*Respective rights of railway companies and former land owners to the land taken by the former for railroad purposes. Railway farm crossings. Trespass.*

One, whose land has been taken, appraised and paid for by a railroad company, under their charter, for railroad purposes, has no right to enter upon or use such land for any purpose which in the least degree endangers or embarasses its use, by the company, for any of the objects which the railway is intended to accomplish; as in this case, for instance, to enter upon the land with teams to remove turf therefrom, the effect of such entry and removal being to enhance the danger of cattle getting upon the track, and to increase the dust at the time of the passage of the cars.

Under sec. 43, chap. 26, p. 200, Comp. Stat., in regard to railway farm crossings, neither the railway company nor the adjacent land owner have the right to determine separately, and without the consent of the other party, the number, character and location of the farm crossings.

The proviso to sec. 14, of the charter of the Conn. and Pass. R. R. Co.,* gave the land owner no right to cross the track which could not be controlled and regulated by subsequent general legislation, and sec. 43 of chap. 26 of the Compiled Statutes had the effect to regulate and define the right of crossing conferred by that proviso.

The owner of land adjoining a railroad track has no right to build a farm crossing at any other point than the one fixed by the commissioners, or agreed upon with the railroad company, nor to cross the track at any other point than the established crossing.

A railway company may maintain trespass for all unlawful entries and acts upon the land taken by them for railroad purposes under their charter, whenever such entries and acts interfere with the exclusive possession of such land which the company is entitled to.

TRESPASS *quare clausum fregit*. The case was referred and the referee reported the following facts :

At the time the plaintiffs' railroad was constructed, a portion of their road bed and the land adjoining on each side was taken by them from the defendant, and the damages for such taking were duly appraised and paid according to the provisions of the plaintiffs' charter. After this land, so taken and paid for, had been enclosed by the plaintiffs, and while it was in their possession, the defendant, at different times, entered thereon with his servants, oxen and cart, through the fences enclosing it, and cut and carried away the turf from a portion of it lying between the railroad track and the fence. This portion was about two rods wide and fifty rods long. This entry and removal of the turf was committed under a claim of right by the defendant, who owned the land adjoining the enclosure, but it was against the will and protest of the plaintiffs.

The referee also found that such entries by the defendant on this land enhanced the danger of accident to the passengers and employees on the plaintiffs' road, on account of the liability of the oxen from fright or otherwise to run upon the railroad track, and he also found that the removal of the turf increased the dust about the cars and engines when in motion, thereby annoying the passengers and to some extent injuring the machinery of the locomotives ; but that if the defendant had the right to enter the

---

* This proviso is recited in the brief of the defendant's counsel.

enclosure with his team and remove the turf, he had done so in a safe and prudent manner.

The referee also reported that the defendant, without the consent and against the wishes of the plaintiffs, had taken down one length of the plaintiffs' fence on each side of the railroad track on his farm, and made a " crossing" about twenty rods south of the " crossing" made by the plaintiffs for the accommodation of the defendant. The defendant did this for his own convenience, to enable him to draw manure and produce across the track, which could be done more conveniently at the new than the old " crossing." In making this " crossing" the defendant filled the ditch on the side of the track, which had a tendency to dam up the water and saturate the embankment on which the track was laid. He also laid *loose* planks between the rails, which rendered the passage of the engine and cars less safe than if the planks were fastened, and the referee also found that the crossing of the track at this place with teams, and the removal of the fence enhanced the danger of accident on the railroad.

The referee further reported that if the defendant was a trespasser in the acts above detailed, the plaintiffs were entitled to recover for building the new crossing, taking down the fence at that place, and crossing the track with teams, the sum of ten dollars, and for entering the land adjoining the track at the other place and removing the turf therefrom, the sum of thirty-five dollars.

The county court held that the acts of the defendant, complained of and reported by the referee, were trespasses, and rendered judgment for the plaintiffs upon the report for nominal damages and costs, the plaintiffs having waived their claim for the actual damages reported by the referee.

To this judgment of the county court the defendant excepted.

*Ormsby & Farnham,* for the defendant.

1. The action is wrongly brought. The plaintiffs' right to the land consisted only of an easement, and even if the defendant's acts tended to interfere with their enjoyment of that easement, the action should have been case, and not trespass.

2. The acts of the defendant in regard to the new crossing

give no ground of action. The original charter of the plaintiffs expressly provides that land owners shall have the right of crossing. The provision to section 14 says "*nothing in this act shall be construed to prevent the crossing of said road or way, with teams, or otherwise, in such a manner as shall be calculated not to injure the same.*" As this is a charter provision, subject to which the land of the defendant was condemned to the plaintiffs, it cannot be controlled by subsequently passed general statutes. The general statutes (1849) afterwards passed, requiring railway companies to provide crossings, cattle guards, etc., if obligatory on the companies, are, as to the rights of the land owners, cumulative. Such enactments cannot, without their consent, modify in the least the rights of the former. But these statutes expressly provide for the preservation of all rights previously accrued under charters.

*A. Howard, Jr.*, for the plaintiffs.

The land which is taken under the right of *eminent domain* which exists in this State, for the use of a railroad, becomes so far the property of the railroad corporation that their right is exclusive in its use and possession, and those from whom the land is taken retain no right to its use or occupation; *Hurd* v. *R. & B. R. R. Co.*, 25 Vt. 116; *Jackson* v. *R. & B. R. R. Co.*, 25 Vt. 150; Redfield on Railways, p. 127, sec. 11, and note 15.

ALDIS J. The action is trespass, *qu. cls. fr.*

It appears that the land upon which the alleged trespass was committed was originally a part of the farm owned by the defendant, and that it was taken by the plaintiffs, under their charter, and the damages duly appraised and paid.

The defendant, being the adjoining land owner, claims the right to enter with his servants, oxen and cart, through the plaintiffs' fence upon the strip of land lying between the fence and the railroad track, and to cut and carry away the turf.

He also claims the right to take up a length of fence on each side of the road on his farm, and to make a farm crossing for his own convenience, without the consent of the plaintiffs or the authority of the commissioners, at a place distant and different

from the crossing made by the plaintiffs, and to use the farm crossing, so by him made, for the convenience of the work on his farm.

Although the right which a railroad company acquires to land taken under their charter is said to be merely an easement, yet the nature of their business, their obligations to the community and the public safety, require that their possession of the land so taken should be absolute and exclusive against the adjacent land owner, so far as to secure fully every purpose for which the railroad is made and used.

The possession of the railroad company cannot be limited to any point of occupation less absolute and exclusive than this: that the corporation may do any act upon the land conducive to those public uses for which their charter was granted, and may exclude the land owner from taking any possession or doing any act upon the land which may in the least degree tend to jeopardize the safe transportation of passengers and freight upon the road, or which may in any way interfere with or embarass their use of the road and land for any of the purposes which the railway is intended to accomplish. This possession in Massachusetts has been said to be "practically exclusive;" 2 Gray 574. In *Jackson* v. *The R. & B. R. R. Co.*, 25 Vt. 159, though the precise point was not under consideration, Ch. J. REDFIELD says "the R. R. Co. must have the right at all times to the exclusive occupancy of the land taken, and to exclude all concurrent occupancy by the former owners in any mode and for any purpose." Without stopping to inquire whether a possible case may not exist where the land owner might enter to obtain mines or minerals, or to take herbage or other vegetable growth, it is obvious that the possession of the railroad company must ordinarily and practically be absolute and exclusive. Hence any entry by the land owner or any act done by him upon the land which tends in the least to impair the structure of the road, to endanger the running of trains, to lessen the safety or comfort of passengers, or generally to embarrass the use of the road for the purposes for which it was built, or the power of the railroad company to keep it in repair, must be deemed wrongful.

I. The removal of turf from the sides of the road and the

adjacent strips of land is clearly an unlawful act on the part of the land owner. Where the road bed and adjacent soil are bare, dust is increased by the motion of the engines and cars as they pass along. This becomes a great annoyance to passengers at certain seasons of the year, and especially in the dry, hot weather of summer. To prevent or remedy this evil the railroad companies are sometimes obliged to incur expense. To some extent, doubtless, the dust is injurious to the machinery of the engines. The railroad companies have the right to preserve and promote, as far as practicable, a growth of turf along their road bed and its sides, and upon the adjacent strips of land; and an entry by the adjoining land owner to cut and carry away the turf must be held to be a trespass.

The referee, in estimating the damages, allowed the plaintiffs to recover for the value of the turf so removed. But as the plaintiffs have remitted the damages and claim only nominal damages, we need not inquire as to the respective rights of property which the land owner and the company may have in the soil and herbage of land taken by the plaintiffs under their charter.

II. The 43d section of the 26th chapter of the Compiled Statutes provides that if the parties cannot agree upon the plan, manner or number of farm crossings, the same shall be determined by commissioners. This, by implication, clearly precludes both the railroad companies and the land owners from determining separately and without the consent of each other, where and what and how many the farm crossings shall be. They must agree or submit the question to the decision of commissioners. From the operation of this general law the defendant claims to be exempt by virtue of the language employed in the plaintiffs' charter, which it is claimed secures to him a right independent of all subsequent legislation, to build and use farm crossings as in his own judgment he may think his convenience requires. The right, as expressed in the charter, to cross the railroad with teams or otherwise, is to be used " in such a manner as shall be calculated not to injure the same." We think the right is to be used not merely so that the track or road bed should not be injured, but that a larger meaning, a more liberal construction, should be put upon this language, viz: that the right to cross the railroad should be

Conn. & Pass. Rivers R. R. Co. v. Holton.

used so as not to injure the proper and reasonable enjoyment of the road by the corporation. It is obvious that the manner in which such a right should be exercised must be settled by the agreement of both parties, or else be regulated by law. Hence the subject necessarily becomes a fit subject of legislation, and neither party can claim any vested rights in the matter beyond the control of legislation. The general law on this subject was required, both to settle the conflicting claims between land own-ers and the railroad companies, and to secure more fully the safety of the public in traveling upon railroads. If every land owner could build and use farm crossings wherever he pleased and as many as he pleased, the dangers of railroad travel would be alarmingly increased. The question of convenience or incon-venience to the land owner in using his farm crossings, sinks into insignificance when compared with the question of safety or danger to all who travel on railroads.

The land owner has no right to build a farm crossing at any other point than the one fixed by commissioners, or agreed upon with the company. He has no right to cross the track at any other point than the established crossing.

In this case many of the acts done by the defendant, and nec-essarily done in order to exercise what he deemed his rights, added materially to the risks and perils attendant upon the use of the road. He filled the ditch along the sides of the road bed, thus damming the water and saturating the embankment upon which the track is laid, and impairing the solidity and perma-nency of the road bed. Here the injury may have been inconsid-erable; at other places, in other soils and at certain seasons of the year, as in the spring and fall, it might produce serious mis-chief.

He laid planks between the rails without fastening; he entered upon the strip of land at the side of the track with oxen; he crossed the track with his teams at other places than the regular farm crossing; he removed a length of the fence on each side of the track. Each and all these acts made it less safe for the plain-tiffs to run their trains upon the road. They endangered the safety of the traveling public. No land owner can hold any such rights. The very purpose for which his land was taken and his

State *v.* Bradford et al.

damages appraised, was to establish a railroad for the *safe* transportation of passengers and freight; and he has no right reserved in the land, the exercise of which may in the most remote manner make such transportation unsafe.    His convenience must yield to the public welfare.

We consider all these acts which the defendant has done under a claim of right to be wrongful.    They endanger the safety of all who travel, and in deciding upon the questions here involved, the public safety is the paramount consideration.

For these injuries to the plaintiffs' rights and possession, trespass is the proper remedy.

The judgment of the county court is affirmed.