THE MISSOURI PACIFIC RAILWAY CO. v. JOHN MANSON.

1. CATTLE-GUARDS, *Purpose of.* The intention of the statute, § 1, ch. 81, Laws of 1869, is to protect the owners and possessors of improved or fenced land over which a railroad is constructed, against the depredations of domestic animals; and the phrase "proper cattle-guards" means such cattle-guards as are reasonably sufficient to prevent the ingress or egress of such animals into and out of the premises.

2. RIGHT-OF-WAY— *Whole Width to be Protected.* A pit under the track does not meet the requirement of the statute, whether the railroad company owns in fee simple the right-of-way, or has merely an easement by condemnation; and where the owner of the adjoining land erects fences up to the right-of-way, it is the duty of the railroad company to make cattle-guards and wing fences, or other protection, extending the whole width of the right-of-way.

3. ——— If there is a superior obligation on the part of a railroad company not to make cattle-guards at the point where the railroad enters improved or fenced land, then it is the duty of the company to construct the same at the first point which will not interfere with the necessities and conveniences of the public and the company.

*Error from Atchison District Court.*

ACTION brought by *Manson* against the *Railway Company,* to recover damages sustained by plaintiff because of the failure of the defendant company to make and maintain certain cattle-guards. Trial at the June Term, 1883, and verdict and judgment for plaintiff for $300. The defendant brings the case here. The opinion states the facts.

*Everest & Waggener,* for plaintiff in error.

*H. M. Jackson,* for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: The facts in this case are substantially as follows: On November 19, 1881, the plaintiff below was the owner of the northeast quarter of section 32, township 5, range 19, in Atchison county; and on that day, with his wife executed to the defendant or its successors in interest, a deed for a strip of land 100 feet in width across the said premises,

22—31 KAS.

being 50 feet on each side of the central line of the defend-
ant's railroad, as then located but not constructed.   The deed
conveyed to the railroad company a fee simple to this strip
óf land.   The located line entered the land on the east line
of the south 80 acres and left the land on the west line of
the north 80 acres and passed some distance north of the
central part of the quarter-section.   On December 31, 1881,
the plaintiff and his wife executed two other deeds: one to
J. E. House, as trustee, for the undivided half of the east
half of the southeast quarter of said northeast quarter of
section 32, being about 20 acres, which it appears was after-
ward laid out as a town site.   The other deed was for a strip
of ground 250 feet in width, extending from the east line of
said quarter-section westwardly 1,000 feet, being 100 feet on
the north side and 150 feet on the south side of the central
line of the railroad.   This strip included the first granted
strip, and the deed conveyed to the company a fee-simple title.
This second strip was intended to be conveyed and used for
depot and station purposes.   It extends some distance beyond
and westwardly of the twenty-acre strip, and into the culti-
vated land of plaintiff below.

At the time of the execution of the first deed, said quarter-
section of land was inclosed with a fence, and part of it was
improved and cultivated.   After the sale of the twenty-acre
tract, the east fence and the south fence along the twenty-
acre tract were moved back so as to inclose the 140 acres
still remaining the property of the plaintiff below, excepting
the strips included therein.   Wheat and corn were grown
upon the remaining land owned by plaintiff below during
the year 1882.   In the spring of that year the company con-
structed a railroad on said first described strip of land across
the quarter-section, and made a cattle-guard on the west line
of the quarter-section, but did not make any other cattle-
guard on the quarter-section of land until after the com-
pletion of the railroad, nor until July, 1882, when it built a
cattle-guard some distance west of the end of the said 250-feet
strip.   No cattle-guard was ever made on the line between

the twenty-acre tract and the remaining tract, or on the east
line of the quarter-section. The making of a cattle-guard at
the line between the twenty-acre tract and the remaining
tract would have cut the depot grounds into two parts. A
side-track extended through the twenty-acre tract and for
some distance west thereof, to about the limit of the depot
grounds. The plaintiff below was damaged by the failure
of the company to construct proper cattle-guards where its
railroad entered his land on the east side. In July, 1882,
he constructed a fence on each side of the right-of-way, to
protect his crops from stock. The whole use of the 250-
feet strip, called depot grounds, where it entered the im-
proved land, was used only for the running of trains
and as a place to deposit earth taken from the grade, and
to go to the section house. A general verdict was returned
against the company for $300, made up of the following ele-
ments or sources of damages: Grass $7, fence $28, wheat
$25, corn $200, labor $40.

The trial court charged the jury, among other things,
that—

"A statute of this state provides, when any railroad runs
through any improved or fenced land, the railroad company
shall make proper cattle-guards on the railroad when it en-
ters and when it leaves such improved or fenced land; that
it was not the duty of the railway company to make a cattle-
guard across its depot grounds; but notwithstanding the com-
pany obtained a fee-simple title to the strip 100 feet in width,
yet it was its duty to make and maintain a cattle-guard,
located at or near the west end of the depot grounds, as near
to it as the lay of the ground, and the necessary use of the
depot grounds, would admit of. If the cattle-guard actually
put in was placed further west than it should have been, and
if thereby it became necessary for the plaintiff to make a
fence from his east line to the cattle-guard, in order to pro-
tect his crops, then he would be entitled to recover as damages
the value of the fence from the cattle-guard as located, to the
place where it should have been made, but not to the line of
his land."

The court further charged the jury that—

"The intention of the statute is to protect the owners and

possessors of improved or fenced land, over which a railroad is constructed, against the depredations of domestic animals; and the term, ' proper cattle-guards,' means such cattle-guards as are reasonably sufficient to prevent the ingress or egress of such animals into or out of the premises."

All of this was excepted to.

On the part of the company, it is contended that under the statute a railroad company is not required to construct cattle-guards "on its railroad," where it owns a fee-simple title to the land on which its track is built. In support of this, the argument is that it was not the intention of the legislature to require a railroad company to do a useless thing; that the construction of a cattle-guard "on its railroad" would in no manner benefit the owner of the adjoining land without the construction of wing fences; that there is no law in this state making it the duty of a railroad company to construct such fences; that the land-owner, without the consent of the railroad company, would have no right to construct such fences, for in doing so, he would be a trespasser upon the land of the company.

It is further contended that the plaintiff below, by conveying a strip of land one hundred feet wide through his farm, thereby divided his farm; that he reserved and had after such conveyance no right to cross this strip of ground; that there was no public road over it; that there was no reservation in his deed to the company of a private road-way or crossing; that the company was under no obligation to fence its track; that as between the plaintiff and the company, there was no greater obligation on the part of the company to fence, than exists between adjoining land-owners to build partition fences; that the company could use its own land in any manner it saw proper, and the adjoining land-owner had no right to demand that the company should construct a cattle-guard on its property for his use or protection.

Counsel for the company fail to give sufficient force to the statute, §1, ch. 81, Laws of 1869. This statute applies, whether a railroad company acquires an easement for its right-of-way by condemnation proceedings, or holds its right-of-way

by absolute title. Under condemnation proceedings, a railroad company acquires the exclusive use of the land condemned, so far as is necessary for railroad purposes, and the original land-owner has no right to go upon the land or construct fences thereon, if his action interferes with the use of the property condemned for railroad purposes. Therefore, in many cases the right of the owner practically amounts to nothing where the land is condemned for a railroad company, because the purposes of the railroad company may require the use of the land taken to such a degree as to forbid the owner from any benefit whatever. (*Railway Co. v. Allen*, 22 Kas. 285.)

We perceive no error in the charge of the court, because it was the duty of the company to make and maintain a cattle-guard at or near the west end of its depot grounds, and as near to it as the lay of the ground and the necessary use thereof would admit of. (*Railroad Co. v. Newbrander*, Ohio Supreme Court, April 24, 1883; 11 Am. & Eng. Rld. Cases, 480; *Mundhenk v. Railroad Co.*, Iowa Supreme Court, June, 1882; 11 Am. & Eng. Rld. Cases, 463.)

Further than this, the term "cattle-guards" in the sense in which it is employed in the statute, means such an appliance as will prevent animals from going on the land adjoining the right-of-way. Having in view the purpose of the statute, it will not do to limit the construction of cattle-guards to the track or road-bed merely; therefore the statute is not complied with by the construction of a pit under the track or road-bed. A proper cattle-guard in this case imports a guard or protection extending the whole width of the right-of-way. (See *Heskett v. Railway Co.*, Iowa Supreme Court, September 19, 1883, 6 N. W. Rep. 525.)

As the Missouri Pacific railway company of Kansas was consolidated with the Missouri Pacific railway company on January 25, 1882, and as the answer alleged the latter company owned, constructed and operated the railroad from and after January 25, 1882, and as the reply admitted all this, the court committed no error in permitting the petition to be

amended so as to charge the Missouri Pacific railway company with the failure to construct the cattle-guards required by the statute. The damages alleged occurred long after January 25, 1882, and after the consolidation; therefore the Missouri Pacific railway company was the proper party defendant.

The other alleged errors are neither material nor important, and need no special comment.

The judgment of the district court must be affirmed.

All the Justices concurring.