JEREMIAH HAYDEN *vs.* SYLVESTER H. SKILLINGS.

Somerset. Opinion November 9, 1886.

*Railroads. Hay and grass growing within railroad location.*

A railroad corporation has practically the exclusive possession and control of the land within the lines of its location and the authority of removing therefrom all things growing thereon, the removal of which it may deem necessarily conducive to the safe management of its road.

ON REPORT.

The opinion states the case.

*Messrs. E. W. and F. E. McFadden,* for plaintiff.

What is an easement? Webster defines it as "in law, any privilege or convenience which one man has of another, either by prescription or charter, without profit; as a way through his land, " &c.

Bouvier defines it 1st, "To be a liberty, privilege or advantage, which one man may have in the lands of another, without profit; it may arise by deed or prescription." "This is an incorporeal heraditament, and corresponds nearly to the servitudes or services of the civil law. "

"The owner of the soil has right to all above and under ground, except only the right of passage, for the king and his people. " 1st J. Burrow, 133.

A private individual, under the direction of the proper officer, may lawfully cut the grass growing beside the highway, if it impedes the exercise of the right of the public to the enjoyment of the public easement. But the grass belongs to the owner of the fee, and if the person cutting it, carries it away, this renders the whole act wrongful, and the person committing it, a trespasser *ab initio.* " *Cole* v. *Drew,* 44 Vt. 49.

"The public have no other right, but that of passing and repassing and the title to the land, and all the profits to be derived from it consistently with, and subject to, the right of

way, remain in the owner of the soil. " 16 Mass. 33 ; 4 Mass. 429, 595 ; 13 Mass. 259 ; 1 Pick. 122 ; 1 Roll. Abr. 392.

The public have only an easement in a turnpike road, and the owner of the soil may maintain trespass against an individual for ploughing up the land. 1 Pick. 122 ; 2 Mass. 125 ; 6 Mass. 454 ; 1 Roll. Abr. 392. Railroads are public highways. 63 Maine, 276 ; 60 Maine, 124.

And, of course, are subject to the law of easements, as are common highways, and this easement gives them the right to build, repair and run their railroad. It gives them no further right to the soil or to the products of the soil, these still remain with the owner of the soil. Wash. on Easements, 185 ; 6 Mass. 454 ; 6 Pick. 57 ; 1 Burr. 133.

That the plaintiff was the owner of the soil appears by the agreed statement in the case, and as such owner he was entitled to the possession subject only to the easement. 1st J. Burrow, 133 ; 49 Maine, 207 ; 65 Maine, 124 ; 66 Maine, 38 ; 2 Mass. 127 ; 44 Vt. 49 ; 4 Pick. 244 ; 6 Pick. 58.

But surrounding circumstances of aggravation will materially influence the amount of charges to be recovered for a trespass upon lands. This trespass was after notice or warning not to trespass. 1 Ad. on Torts, sec. 455 ; 5 Taunt. 441.

But the counsel says, in his brief statement that " said land was taken by right of eminent domain for the purpose of a railroad " that is just what it was taken for, no more nor less. It was not taken to furnish feed for defendant's cow.

The law of eminent domain would not allow that. For private property shall not be taken for public uses without just compensation ; nor unless the public exigences require it. " Con. of Maine, Art. 1, sec. 21.

Now the public exigencies do not require that the plaintiff shall furnish hay for defendant's cow. Nor could the direction of said railroad company justify the defendant in committing a trespass upon plaintiff's land. 44 Vt. 49.

Where an entry is made under authority or license given to the party by law, and he abuses it, he becomes a trespasser *ab initio.*

*E. F. Webb* and *Appleton Webb* for the defendant.

Trespass was not the proper form of action.  1 Chitty, Pl. § §
139, 179 ;  2 Greenl. Ev. § 616 ; *Shaw* v. *Mussey,* 48 Maine,
247.

The easement of a railroad differs from that of a highway.
Wash. Easements, 158 ; *Adams* v. *Emerson,* 6 Pick. 57 ; 104
Mass. 111 ; *Appleton* v. *Fullerton,* 1 Gray, 192 ; 1 Rover,
Railways, *Holliday* v. *Davis,* 5 Oregon, 40.

A railroad company has exclusive possession within its
location.  Pierce, Railroads, 159 ; Redf. Railroads, 127 ; *Pitts,
etc. R. R. Co.* v. *Jones,* 86 Ind. 496, (44 Am. R. 334 ;)  2
Waterman, Trespass, 677 ; *Hurd* v. *Rutland & B. R. R. Co.*
25 Vt. 116 ; *Weston* v. *Foster,* 7 Met. 297 ; 1 Rorer, Railroads,
414 ; *Henry* v. *Dubuque & Pac. R. R. Co.* 2 Iowa, 288 ;
*Preston* v. *Same,* 11 Iowa, 15 ; *Blake* v. *Rich,* 34 N. H. 282 ;
*Kellogg* v. *Malin,* 50 Mo. 496 ;  2 Wood's R'y Law, 770 ;
*Conn. & Pass. R. R. Co.* 32 Vt. 43 ; *Kan. Cent. R. R.* v.
*Allen,* 22 Kansas, 285, (31 Am. R. 190 ;) *Brainard* v. *Clapp,*
10 Cush. 10 ; *Hazen* v. *B. & M. R. R.* 2 Gray, 580 ; *Jackson*
v. *Rut. & Bur. R. R. Co.* 25 Vt. 150 ; *Troy & Boston R. R.
Co.* v. *Potter,* 42 Vt. 265, (1 Am. R. 325.)

It is the duty of the railroad company to keep the roadway
clear of combustible material.  *Pitts, etc. R. R.* v. *Jones,* 86,
Ind. 496 ; *Salmon* v. *Del. etc. R. R. Co.* 9 Vroom, 5, (20 Am.
R. 356 ;) *Kellogg* v. *Chicago & N. W. R. R. Co.* 26 Wis. 227
(7 Am. R. 71) ; *Webb* v. *Rome, etc. R. R. Co.* 49 N. Y. 420
(10 Am. R. 389) ; *Vaughan* v. *Taff-Vale R. R. Co.* 5 H. & N.
679 ; *Aycock* v. *Raleigh, etc. R. R. Co.* 89 N. C. 321 ; 1
Thompson, Negligence, 162, note 8.

VIRGIN, J.  Trespass *qu. c.* by the owner of the fee for cutting
and carrying away grass growing within the located limits of
the land duly taken by right of eminent domain and occupied
by the Maine Central railroad.

The defendant justifies, as section foreman of the railroad
company, in executing the instructions of its general manager
and road-master to cut and burn the bushes, grass and rubbish,

within his section, along the side of its track, to prevent fire from its locomotive spreading upon land of adjoining and adjacent owners.

It is common learning that railroads are of public convenience and necessity, and that when the corporations can not purchase the land for their location and use, they may take it by right of eminent domain on payment of the damages legally assessed therefor, which, considering the elements which enter into their estimation, is practically quite equal to the full value of the land. Hence, although such corporations are owned by private individuals, still they are denominated *quasi* public corporations, and in the land so taken they acquire an easement, an incorporeal right only, the fee still remaining in the owner of the land.

But easements are as various as the purposes to which land and buildings may be applied. They vary as to the mode and extent of occupation according to the particular use to be made of them under the authority by which they are acquired. The character and extent of easements acquired by pew owners in meeting-houses, in land flowed by mill-dams, in land taken for canals, town ways and highways, are well defined, and the respective rights of the land owners and of those having the easements, have long been settled by numerous decisions of this court, which it is needless to cite here. The mode and extent of the use necessarily " varies not only according to the exigencies of each particular kind, but to the varying circumstances of each species of public work." *Brainard* v. *Clapp*, 10 Cush. 10. The rights under public easements are commensurate with, and include such use and occupation as are directly or incidentally conducive to the free exercise and " full enjoyment of the franchise and the advancement of the public benefit contemplated by the public work."

It follows that the easement in lands taken for the purpose of a railroad is obviously vastly different from that in lands appropriated to the various kinds of other public ways. Its propelling power, its numerous freight and passenger trains driven at the high rate of speed demanded by the public— its absolute responsibility for damage to insurable property, real

and personal, contiguous to its lines, caused by fire communicated, regardless of all possible care on its part, by its locomotives, (R. S., c. 51, § 64,) or so communicated to materials growing and naturally being between its road and property not contiguous, and extending thereto, (*Pratt* v. *At. & St. L. R. R. Co.* 42 Maine, 579,) their common law and numerous statute liabilities— all require that they shall have, as means to meet these responsibilities, the fullest opportunity which the freest use, occupation and control of the land within its lines can afford, without the intervention of any acts on the part of the landowner which may tend to endanger its trains or otherwise embarrass its use of the easement for the purpose for which its charter was granted.   To this end it must have, practically, the exclusive possession and control of the land within the lines of its location, and the authority to remove therefrom all things growing thereon, the removal of which it may deem necessarily conducive to the safe management of its road.

And such is the doctrine held by law writers and by numerous decisions of courts of the highest respectability in several of the states, among which are the following : *Brainard* v. *Clapp*, 10 Cush. 10 ; *Hazen* v. *Boston & Maine Railroad*, 2 Gray, 577, 580 ; *Prop'rs L. & Canals* v. *Nashua & Low. R. R. Co.* 104 Mass. 11, and cases there cited ; *Jackson* v. *Rutland & Burl. R. R. Co.* 25 Vt. 150 ; *Conn. & P. Riv. R. R. Co.* v. *Holton*, 32 Vt. 43.

The precise question raised here was decided in a late case in Vermont, and in speaking for the court, Chief Justice PIERPONT said :

"If the right to remove the herbage be conceded, adjoining land owners throughout the state would be found, at the proper seasons, within the lines of the road, with their hired men, tools and perhaps teams, for the purpose of taking off the herbage, and the detriment to the railroad company and the danger to the trains and passengers would be increased a thousand fold.   The men employed by the land owners would be likely to be careless, both in respect of being on the track in person, and temporarily laying their tools thereon, from which accidents might reasonably

be expected to occur, to avoid which a constant and additional degree of watchfulness would be required by the engineers having trains in charge. . . And under the best management by the railroad company, accidents might be reasonably expected to occur from such causes. In the removal of such causes, the railroad companies and the traveling public are greatly interested. Everything which tends to increase the danger of travel upon railroads, public policy requires should be prevented if possible. A railroad company should have such sole and exclusive control of the land within the lines of its road as shall enable it so to keep it as to exclude all probability of any accident resulting from any outside interference with such possession."

The grass could have been of but slight value to the plaintiff; but whether it was worth what he estimated it or what the defendant testified, or whether it was harvested or burned on the ground, is immaterial.

*Judgment for the defendant.*

PETERS, C. J., DANFORTH, LIBBEY, FOSTER and HASKELL, JJ., concurred.