No. 22,777.

O. A. ABBEY, *Appellee*, v. CHARLES E. SCHAFF, as Receiver of the MISSOURI, KANSAS & TEXAS RAILWAY COMPANY, *Appellant*.

SYLLABUS BY THE COURT.

1. DAMAGE TO STOCK—*Insufficient Cattle Guards—Evidence—Findings*. The evidence considered, and held sufficient to sustain the findings of fact.

2. SAME—*What Are Proper Cattle Guards*. Proper cattle guards, required by the cattle-guard law (Gen. Stat. 1915, § 8459), are guards which are reasonably sufficient to prevent the passing of stock.

3. SAME—*Night-herd Law—Duty of Owner Not to Permit His Stock to Run at Large*. Under the night-herd law (Gen. Stat. 1915, §§ 10974-10976), stock is confined when means shown by experience to be adequate for the purpose are employed, and if an escape occur without fault of the owner, the escaping animals are not regarded as running at large.

4. SAME—*Recovery Under Railroad Stock-liability Law—Attorney Fee*. The railroad stock-liability law (Gen. Stat. 1915, §§ 8557, 8558) authorizes recovery of an attorney fee in an action for killing stock which reached the railroad by passing from a highway over a defective cattle guard.

Appeal from Linn district court; EDWARD C. GATES, judge. Opinion filed December 11, 1920. Affirmed.

*W. W. Brown, O. T. Atherton*, both of Parsons, and *John H. Crider*, of Fort Scott, for the appellant.

*John A. Hall*, of Pleasanton, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one to recover the value of stock killed on the defendant's right of way, by one of his trains. The plaintiff recovered, and the defendant appeals.

The story is told by the findings of fact:

"1. On October 12, 1917, Chas. E. Schaff was operating the Missouri, Kansas & Texas Railway Company, as receiver, in and through Linn county, Kansas.

"2. On that date plaintiff resided about one quarter of a mile from the right of way and track of the defendant, and was then the owner of two mules which were of the reasonable value of $450.

Abbey v. Railway Co.

"3. The night-herd law was in effect in Centerville township at the time the mules were killed, and said mules were killed in said township, on the railroad operated by the defendant receiver.

"4. On the night of October 12, 1917, the plaintiff confined these mules in a lot in an ordinarily safe manner, and sometime during the night these mules accidentally escaped from that lot, without any fault or negligence on the part of the plaintiff.

"5. Such mules came upon the right of way of the defendant, by crossing the cattle guards maintained by the defendant, and such cattle guards were not proper cattle guards, and were insufficient and of such faulty construction that they would not ordinarily turn such domestic animals as mules and horses.

"6. While on the right of way of the defendant, and after crossing said guards, such mules were struck and killed by a passenger train operated by the defendant, during the night of October 12, 1917.

"7. Said mules were not killed on a public crossing.

"8. Plaintiff served notice upon the ticket agent of the defendant at Centerville, Kan., of his demand for damage because of the killing of said mules, and the defendant failed for more than thirty days thereafter, before the beginning of this action, to pay plaintiff the damages sustained by the killing of said mules.

"9. A reasonable attorney fee for the plaintiff in this action is the sum of $100."

The principal ground of complaint is that material findings of fact were not sustained by sufficient evidence. It is said the mules were insecurely confined. The evidence on the subject was fairly summarized in finding No. 4. It is said the cattle guards were standard guards, in general use on several railway systems, were properly constructed, and were in good repair. Neither railroad companies nor cattle-guard manufacturers who succeed in having their product installed on railroads are permitted to establish standards. The statute does that. It specifies proper guards, and proper guards are those which are reasonably sufficient to prevent the passing of stock. (*Mo. Pac. Rly. Co. v. Manson,* 31 Kan. 337, 2 Pac. 800; *Mo. Pac. Rly. Co. v. Morrow,* 32 Kan. 217, syl. ¶ 3, 4 Pac. 87.) The evidence was that cattle and horses crossed the guards the defendant was using, both at the place in question and elsewhere, at will. It is said the mules were struck on a highway crossing. Marks on the cattle guards, tracks on the right of way inside the guards, blood on the ties, and locality of the carcasses, indicated the mules were struck after they had left the crossing, and had passed over the guards.

It is said the night-herd law in force in the county governs the incident, and the plaintiff did not keep the mules confined at night. The night-herd law relates to the subject of stock running at large. Stock is confined when means shown by experience to be adequate for the purpose are employed, and if, as in this instance, an escape occur without fault of the owner, the consequences of allowing stock to run at large are not visited upon him.

It is said the cattle-guard law does not provide for recovery of an attorney fee. The cattle-guard law supplements the fence law, and the liability of a railroad for injury to stock occasioned by failure to fence, is covered by sections 8557 and 8558 of the General Statutes of 1915, which allow recovery of an attorney fee.

The judgment of the district court is affirmed.