No. 30,113.

OLIVER BARKER, *Appellee,* v. MISSOURI-KANSAS-TEXAS RAILROAD
COMPANY, *Appellant.*

(5 P. 2d 811.)

Opinion
filed December 12, 1931.

*W. W. Brown,* of Parsons, and *Douglas Hudson,* of Fort Scott, for the
appellant.

*W. F. Jackson,* of Fort Scott, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action for damages for the loss of cer-
tain cattle which were killed by a north-bound train on the right
of way of defendant's railroad which runs north and south near
Hiattville.

Plaintiff alleged that on June 1, 1928, without his fault, a number
of his cattle escaped from a pasture field and strayed along the
east-and-west public road until they came to its intersection with
defendant's railway; and that by reason of the defective construc-
tion of the cattle guard and wing fence thereat, a bull and cow
belonging to plaintiff entered the right of way and were struck and
injured by defendant's train so that they died.

Plaintiff charged defendant with negligence in the way it ran
its train, and—

"That at the time and place when and where this cow and bull were struck,
injured and killed by said train, the fence along the right of way, the wing
fence from the track along the north side of the public road, and the cattle
guard from the public road onto the right of way, were all so poor, defective,
out of repair and in such poor condition that said fences and cattle guard
would not prevent cattle, such as this cow and bull, from going onto the right
of way of this defendant; and that said defendant did not, at said time and
place, inclose said right of way with a good and lawful fence, sufficient to
prevent such animals from being on said right of way."

Plaintiff alleged due notice and demand for compensation for his animals, and prayed judgment for $200—for the loss of the cow $75, and for the bull $125.

Defendant's answer contained a general denial and alleged that plaintiff's cattle were running at large in violation of the herd law, and that if any of them were struck by defendant's train such collision occurred on the public highway at its intersection with the railway and not within the right of way inclosed by the wing fences and cattle guards.

This cause was tried before a jury. The evidence of the parties ranged about the question of the whereabouts of the animals when they were struck by the train, and about the condition of the cattle guard and wing fence on the north side of the highway. Plaintiff's testimony tended to show that there was a space of fourteen inches between the east side of the cattle guard and the bottom of the A frame of the wing fence east of the railway track through which cattle could easily pass from the highway into the inclosed right of way, that the cow lay about twenty feet north of the cattle guard on the west side of the track, and that the bull lay about seventy-five feet north of the cattle guard on the east side of the track—from which facts it was a fair inference that the cow and bull must have passed from the highway northward and beyond the cattle guard and wing fence before being struck. The evidence of plaintiff's witnesses was largely in accord with his own, except as to the whereabouts of the cow when she was struck. Their testimony tended to show that the cow must have been struck before she had passed the cattle guard, that she had apparently fallen upon the A frame on the west and broke it and the post which upheld it. Plaintiff himself candidly said—

"There was red hair on this A frame. As far as I could tell, it was hair from the side of this cow. . . . It could be more possible that she was hit on the [public] road than where the male was; it is purely impossible for the male to have been hit on the crossing."

The evidence for defendant tended to show that the cattle guard and wing fence were in good condition, that the cattle were on the public road at the intersection when the train came along and that the cow and bull "got scared and whirled to run on the track." According to defendant's evidence there were no cattle tracks showing that the animals had walked between the cattle guard and the A frames, nor any cattle tracks north of the crossing. There was a

mark on the soft earth where the bull might have fallen after being flung from the engine. The inference derivable from defendant's evidence was that the bull must have been struck at the cattle guard and carried on the engine for some distance and then thrown upon the railway grade on the east side of the track.

When plaintiff rested defendant demurred to his evidence. The court ruled—

"By the Court: The demurrer will be sustained as to the cow and over-ruled as to the other."

Later, while defendant was presenting its evidence, the presiding judge called the trial attorneys to the bar and without making a record of the proceedings informed them that he intended to let the entire case go to the jury. He made no order setting aside his ruling on the defendant's demurrer at the close of plaintiff's testimony.

The jury returned a verdict in the sum of $125 damage for the bull, $75 for the cow, and $75 attorney's fee for plaintiff's attorney.

The jury also answered a number of special questions, some of which read:

"1. Where were the red cow and yearling bull when first seen by Fireman Foster? A. Jury does not believe he saw cattle that were killed.

"5. How far were the animals from the front of the locomotive when they were first discovered in the road and near the track? A. Cattle seen in road 450 feet.

"7. Were there any cattle tracks north of the north cattle guard? A. Do not know.

"8. How far north of the west A frame was the body of the red cow found? A. Partly on A frame.

"11. If you find for the plaintiff, upon what acts of negligence do you base your verdict? A. Bad fence."

The trial court struck out the item of $75 which the jury allowed as the value of the cow, and gave judgment for plaintiff on the other items included in the verdict.

Defendant appeals, contending that the evidence was insufficient to support the verdict and judgment.

Defendant's argument as to its insufficiency is partly predicated on the evidence of the fireman. He testified that when 400 or 450 feet south of the road crossing he saw the backs of the bull and cow and that they appeared to be eating grass. Just as he said to the engineer, "There was cattle at the crossing," the cow and bull

appeared to turn and run in front of the engine; he saw the cow knocked across the cattle guard on his side of the engine, and the bull disappeared. But there were other facts to be taken into account. Nine of plaintiff's cattle were about the crossing, and there was a fourteen-inch space between the east side of the cattle guard and the A frame, through which, as plaintiff testified, "You could ride a horse through between the cattle guard and the bottom of the A frame."

Another witness for plaintiff testified:

"I drag the roads along that crossing. The wing fences were in poor condition, had been for three or four years. The A guard was from twelve to fourteen inches from the spike guards. It gave a path that a man or animal could walk down on the east side of the track. An animal could have walked along the track on the east side if it had a mind to."

Defendant's section foreman testified that the wing fence on the east side of the cattle guard was in good condition on the evening after the collision and that it had not required to be repaired since that time. Plaintiff, however, on rebuttal testified:

"The twelve- or fourteen-inch path I testified to yesterday along the east end of the ties at the crossing has been repaired."

Counsel for defendant are familiar with the limitations of an appellate review. (*Sawtelle v. Cosden Oil & Gas Co.,* 128 Kan. 220, 225, 277 Pac. 45.) Manifestly the jury disbelieved the fireman's testimony—perhaps because they believed he was mistaken in his testimony, mayhap because they discredited his veracity. With such an issue of disputed fact this court has nothing to do. Apparently the evidence supporting the verdict, so far as the trial court permitted it to stand, was that which tended to show the defective condition of the cattle guard and A frame on the east, between which the bull could pass, and the location of the wounded bull, which lay from seventy-five to ninety feet north of the cattle guard. From these facts it was a fair inference for the jury that the bull was inside the railway inclosure when struck; and defendant's evidence and the other circumstances did not compel the trial court and jury to find that the bull was struck at the cattle guard and carried on the engine or thrown by it a distance of seventy-five or ninety feet.

Counsel for defendant invoke the rule announced in *U. P. Rly. Co. v. Shannon,* 38 Kan. 476, 16 Pac. 836, where it was held:

"Where the findings are not supported by direct evidence, and can be upheld only by presumptions based upon incomplete proof, and are contradicted by positive evidence, and inferentially by the admissions of the party in whose favor they are found, they should be set aside." (Syl. ¶ 2.)

But, as we have seen, there was no lack of direct evidence. The wounded bull lying seventy-five to ninety feet north of the defective cattle guard and A frame was evidence which bore directly on the issue. (*Abbey v. Railway Co.*, 108 Kan. 88, 194 Pac. 191.) The evidential facts adduced by plaintiff effectively controverted the positive evidence of the fireman—at least a jury might so conclude; and this court must hold that the evidence was sufficient to take the case to the jury.

The judgment is affirmed.